EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Plaintiff,

v.

ANCHOR CONTINENTAL,
INC., Defendant.

Civ. A. No. 75–1865.

United States District Court,
D. South Carolina,
Columbia Division.

Jan. 21, 1977.

Abner W. Sibal, Gen. Counsel, EEOC, Washington, D. C., for plaintiff.

James B. Spears, Jr., Haynsworth, Baldwin & Miles, Greenville, S. C., Thomas E. McCutcheon, Whaley, McCutcheon & Blanton, Columbia, S. C., for defendant.

## ORDER

CHAPMAN, District Judge.

This matter is before the Court upon defendant's motion for an Order compelling discovery under Rule 37 of the Federal Rules of Civil Procedure in connection with defendant's Request for Production of Records and Interrogatories. A hearing was held at which time the Court directed the plaintiff to submit for in camera inspection the disputed material. The copies of the documents objected to by the plaintiff and the portions eliminated from other documents previously produced have been submitted and examined by the Court.

The Equal Employment Opportunity Commission brought this action October 22, 1975 under Title 7 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging unlawful employment practices on the part of the defendant. The complaint alleges that since July 2, 1965 and continuously up until the present time defendant has intentionally engaged in unlawful employment practices at its facility in Columbia, South Carolina in violation of § 703 of Title 7 including, but not limited to, the following:

"(a) Discriminating against Blacks by discharging them because of their race and color.

(b) Discriminating against Blacks in promotion because of their race and color.

(c) Discriminating against Blacks in terms and conditions of employment with respect to rehiring and application of privileges such as attending seminars, because of their race and color.

(d) Failing and refusing to take appropriate affirmative action to eliminate its discriminatory employment policies and practices and to correct the effects of past and present discrimination against Blacks."

The complaint asks for a permanent injunction against the defendant from engaging in any employment practice which discriminates because of race, an Order carrying out the policies, practices and affirmative action programs to provide equal opportunities and for back pay and for such other monetary damages as will make the persons adversely affected whole and for such other relief as may be necessary to eradicate the effects of the alleged unlawful employment practices.

The answer of the defendant is primarily a general denial.

After the issues were joined the usual extensive discovery began. The plaintiff served its *first* request for admissions, its *first* notice of taking depositions, its *first* interrogatories to the defendant even before the answer to the complaint was filed.

The Court emphasizes the word "first", since from past experience there will be many other requests for admissions, depositions and interrogatories before the case is ready for trial.

The present problem before the Court involves the answer or failure to answer by EEOC of certain interrogatories propounded by the defendant and the failure of EEOC to produce certain documents. Throughout the plaintiff's response to defendant's interrogatories and plaintiff's response to defendant's motion to produce documents, the plaintiff attempts to exercise a claimed option it has under Rule 33(c) of the Federal Rules of Civil Procedure contending that the answers may be derived or ascertained from the business records of the Commission or "from a compilation, abstract, or summary based thereon, and the burden of deriving or ascertaining the answer is substantially the same for both parties to this action. The answer to this interrogatory can be derived or ascertained from the examination, audit, or inspection of the records specified in this interrogatory or, if not specified in this interrogatory, in this answer. The plaintiff has afforded or will afford to the defendant a reasonable opportunity to examine, audit or inspect those records and to make copies, compilations, abstracts or summaries of those records."

Rule 33(c) provides:

"Option to Produce Business Records. Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, or from a compilation, abstract or summary based thereon, and the *burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served,*\* it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries." (emphasis added)

In addition to Rule 33(c) EEOC also contends that answers to certain interrogatories and production of certain documents are protected by "attorney's work product privilege" and "executive privilege".

Plaintiff asserts that the Rule 33(c) option applies to interrogatories 1(d), 2, 3, 4, 5, 6, 9, 10, 11, 12, 13, 19, 33, 39, 41, 42, 44 and 45. At the hearing plaintiff agreed to specifically answer Nos. 41, 42 and 44.

Plaintiff has tendered to defendant's attorneys parts of its file from which plaintiff contends the defendant should be able to compile the information necessary to satisfy these interrogatories. The defendant refused this tender and the present motion resulted.

After reviewing the contents of plaintiff's file in camera, the Court well understands why the plaintiff sought refuge behind Rule 33(c). Plaintiff has a weak case and is running a gigantic bluff. Defendant has called the bluff and done a service to itself and to others who may find themselves defendants with the Federal government as an adversary.

■ The information sought by defendant is not a business record as mentioned in 33(c).

The type of question asked by the defendant is an attempt by the defendant to find out what the case is all about; whether the plaintiff has an action; what acts of alleged discrimination in employment allegedly occurred; and other facts necessary to the defendant to prepare a proper defense. The allegations of the complaint, which are quoted above, are obviously very general in nature and defendant is entitled to know the specifics of the plaintiff's claim.

Interrogatory 2 states:

---

\* When one of the parties is the Federal government and government records are involved, it is difficult to imagine circumstances when the burden of deriving an answer would be the same.

"For each person named as a Charging Party in answer to Interrogatory 1(e), state:

(a) the date on which he claims to have been discriminatorily discharged from employment with the defendant;

(b) the name and address of each and every person or employer from whom the Charging Party sought any employment after the date disclosed in answer to Interrogatory 2(a) above;

(c) the name and address of each and every person or employer from whom the charging party has received wages, tips or salaries after the date disclosed in Interrogatory 2(a) above, and the specific dates of each such employment;

(d) whether the charging party showed any income on any federal or state income tax return which he or he and his spouse jointly, has filed since the date disclosed in answer to Interrogatory 2(a) above and;

(e) whether the Charging Party has been unable to work for any reason for any period of time since the date disclosed in answer to Interrogatory 2(a) above, and for each such period:

    1. The beginning and ending dated;

    2. The specific reason for the inability to work."

Interrogatory 3 asks for information about the specifics of employees allegedly discriminatorily denied promotion; interrogatory 4 asks similar information about employees allegedly discriminated against in terms and conditions with respect to rehiring; interrogatory 5 asks similar information about alleged discrimination in terms and conditions of employment with respect to application of privileges.

Other interrogatories, to which plaintiff has interposed 33(c), seek information and documents concerning any conciliation efforts the Commission had with defendants underlying the administrative charges upon which the action is based, the date and time of any such conciliation, the identity of documents relating to the claim for back pay, any discussions regarding appropriate affirmative action. Also sought is information relating to witnesses who would testify that the charging party was a very good supervisor, that Negro supervisors were treated differently and other claims of the plaintiff.

After reading the plaintiff's file the Court is convinced that the plaintiff is using Rule 33(c) and its claim of "executive privilege" and "attorney's work product" to hide the fact that plaintiff has a weak case and hopes to harass the defendant into making some type of settlement. "Bluff and harass" are the nicest words to describe the action of the plaintiff. "Extortion" would probably be more appropriate.

The file reflects memorandum, letters and other material that plaintiff seeks to hide, which indicate that much of the investigation was conducted ten years ago and certain claims in the opinion of writers are "very weak".

Also appearing are the following statements:

"Based on my telephone conversations with Mr. Washington (one of the charging parties) I do not believe that he would be a good witness.

The argument would seem to have merit as it relates to back pay, since the longer it takes the Commission to act, the more back pay would be due from the company. This has a kind of unfairness to the company.

The Charging Party refused settlement, did not want reinstatement, but full back pay.

Even if everything Belton says is true— where is the discrimination?"

■ The Court well recognizes that ordinarily opinions of counsel and correspondence between attorneys would be exempt from discovery under the "work product rule".[1] However, there must be an exception to this rule when the Court's in camera inspection reveals that the plaintiff, a

1. *Harper and Row Publishers, Inc. v. Decker*, 423 F.2d 487 (7th Cir. 1970) aff'd 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433, reh. denied 401 U.S. 950, 91 S.Ct. 917, 28 L.Ed.2d 234.

branch of United States government, has little faith in its case, has little evidence to go on and hopes to be able to prove the case through discovery or force a settlement upon a defendant who might not be able to stand the financial burden of defending itself. In the letter of March 27, 1975 from the Regional Attorney in the Atlanta Regional Litigation Center of EEOC to the Associate General Counsel in Washington appears the following:

"It should be stated here that in our opinion the cases of the individual charging parties are weak in each instance from the standpoint of proving violation of Title 7. The real strength of the case as a whole lies in the totally subjective, vague and inconsistent application of policies and practices which tend to have an adverse effect upon blacks, the real proof of which must come, *if at all*, from additional discovery after the lawsuit is filed. The Presentation Memorandum details our reasons for recommending litigation notwithstanding the anticipated problems likely to be encountered. (emphasis added)

The Commission would furthermore be put to some disadvantage in this case because of the long lapse of time since the charges were viable issues. The company's profile has changed somewhat since the initial investigation in 1967. It would seem to be to the Commission's advantage to engage in strong efforts to settle the matter during the pre-suit process."

Two of the charging parties made their claims to the plaintiff June 21, 1967 and the other on July 22, 1970. The report contains additional language of interest to the Court:

"In terms of numbers the respondent company's racial profile according to EEO–1 reports from 1970 to 1974 appear to be very favorable.

In 1970 the company employed a total of 314 persons of whom 104 or 33.1% were black.

In 1974 the company employed a total of 366 persons of whom 169 or 46% were black.

The reports for the intervening years were consistent with the foregoing.

In Columbia, South Carolina SMSA blacks comprised 26% of the total population and 29% of the City of Columbia."

Continuing from the report:

"Nonetheless, in our judgment the foregoing facts would be sufficient to make out a prima facie case against the Respondent Company for racial discrimination in promotions. However, it is possible that this picture may have changed considerably since the investigation was made approximately six years ago. If the matter is approved for litigation then, of course, a more recent accounting could be obtained through discovery."

Later appears the following:

"It seems clear to the writer that the Respondent Company was in effect by its actions in this case and in the Goodwin case attempting to rid itself of 'trouble makers'. The three sisters, and cousin were all very good workers but apparently very outspoken and abrasive. While their actions cannot be condoned, the procedures used in terminating them appear to involve racial considerations. If the case is approved for litigation then extensive discovery would have to be undertaken to bolster the findings in the file.

In all candor it must be stated that in our opinion the cases of the individual Charging Parties are weak from the standpoint of proving a violation of Title 7.

The Commission would furthermore be put to some disadvantage in this case because of the long lapse of time since the charges were viable issues. The company has in all probability made many changes since the initial investigation in 1967. Regular pre-suit procedures coupled with good faith negotiations by opposing counsel would be definitely indicated in this instance."

Having tried a number of Title VII suits this Court is well aware of the enormous amount of time, energy and money required

to litigate in this area. Recent trials have involved from four to six weeks of actual courtroom testimony, scores of witnesses appearing by deposition, thousands of documents introduced into evidence and attorney's fees running well into six figures.

■ The United States District Court for the District of South Carolina will not be a party to an effort by a government agency to harass or coerce anyone into making a settlement of a questionable claim. Already the process of attrition has begun by the plaintiff's attorneys. The defendant's answers to plaintiff's *first* interrogatories are 22 pages long, but attached to the answers as exhibits and providing information requested by the, plaintiff are 230 additional pages. These cover information on hundreds of employees, many of whom are no longer employed by the defendant, and contain information as to race, job title, department, unit, supervisor, promotions, status as of July 15, 1970, status as of the date of the answer to the interrogatory. How many hundreds of man hours this consumed can only be imagined by the Court, and this is the *first* set of interrogatories submitted by the plaintiff.

■ Soon the plaintiff will be submitting second sets of interrogatories, requests for admissions to be followed by third, fourth ad infinitum.[2]

It is obvious that the plaintiff is following the recommendation contained in the March 27, 1975 recommendation for litigation from the Atlanta office to the Washington office, which admitted that the case was weak, it could be proved, *if at all,* from additional discovery and "it would be to the Commission's advantage to engage in *strong* efforts to settle the matter during the pre-suit process."

The pre-suit process is well underway and has as its goal the wearing down of the defendant's will or financial means with which to defend itself in the hope of settling before a trial reveals the admitted weakness of its case.

The Court is aware of *NLRB v. Sears Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), which was brought under the Freedom of Information Act, 5 U.S.C. § 552 in which the Supreme Court said that there was a difference between opinions and decisions of an agency to bring an action or not to bring an action. The Court held that a decision not to bring an action was a final disposition by the agency, but that a decision to bring an action is not a final opinion and is protected under the exemption of attorney's work product. However, Sears was seeking information from the NLRB involving decisions in cases not involving Sears. This information was being sought under the Freedom of Information Act and not being sought by a party in litigation. The present motion is before the Court and is subject to the Federal Rules of Civil Procedure and must be decided in light of the purposes of such rules. The last sentence of Rule 1 of the Federal Rules of Civil Procedure provides "they (the rules) shall be construed to secure the *just, speedy,* and *inexpensive* determination of every action." (emphasis added) To allow the EEOC to proceed on its present course of conduct in this case without revealing the facts to the defendant would be an injustice, would delay the disposition of the case and would result in enormous additional expenses to one of the parties.

If two parties have a conflict and one seeks to resolve the conflict by coercive or bluffing tactics prior to coming to court, this is no concern of the Court. However, once the action is filed in the United States District Court, the Judge becomes an active participant in the proceedings to see that there is a just, speedy and inexpensive determination of the suit.

The plaintiff shows no concern for the terrible financial burden it is placing upon the defendant; no concern for the disruptive effect its action may have upon the defendant's business or its personnel relations; no concern for the time defendant's employees must spend in gathering the in-

---

2. An action brought under Title VII is not a fishing expedition or a general form of relief for

the Government to use to explore its case in the hope of finding such a case does exist.

formation plaintiff has already requested and will in the future request; no concern for the effect this expense and disruption of the defendant's business may have upon the survival of the defendant as a going concern and the jobs of the 340 other people working for defendant without complaints of discrimination.

Equally important is the plaintiff's utter disregard for the caseload of this Court and the enormous amount of court time required to try this type case. The Court has not been able to try a civil action in the Columbia Division for almost one year because of the press of criminal matters.

This is not the normal case of a plaintiff suing on a weak negligence claim hoping for a settlement somewhere prior to the jury's verdict. Such cases take only a few hours to try, not weeks or months as Title VII cases often do.

There is a great interest in "Sunshine Laws" at the present time. These laws are designed to let the public know how the Government handles the affairs of the citizens and how decisions are made. This Court is going to let a little sunshine break through on the file in this case. To allow the EEOC to proceed on its present course of action in this case without revealing the facts to the defendant, would not be in keeping with the Court's responsibility to seek justice in every case.

IT IS, THEREFORE, ORDERED that the plaintiff answer each and every interrogatory that has been propounded by the defendant without reliance upon the provisions of Rule 33(c) and that the plaintiff produce all documents demanded by the defendants in the first Request for Production of Records.

If the plaintiff has a case that it can prove, this Court stands ready and willing to hear the evidence and decide the matter impartially, but this Court will not tolerate an effort by the Federal Government to harass and coerce a defendant, when plaintiff's file reveals what the Court has found in this case.

■ The defendant is the prevailing party on this motion and is entitled to attorney's fees. Although Rule 37(f) provides that expenses and fees may not be awarded against the United States under the Rule "except to the extent permitted by statute", there is a statute, 42 U.S.C. 2000e–5(k), which specifically authorizes fees to prevailing parties in Title VII cases. The Court finds that the amount of One Thousand Two Hundred and No./100 ($1,200.00) Dollars is a fair amount to cover the fees and expenses of the defendant in connection with this motion to compel discovery.

The Court will retain the copy of the documents submitted to it for in camera inspection in order to insure that the plaintiff complies with the terms of this Order.

AND IT IS SO ORDERED.